**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Lynda Graves,

Plaintiff,

vs.

Michael Astrue,
Commissioner of Social Security,

Defendant.

No. 2:07-CV-01258-PHX-GMS

**ORDER**

Pending before the Court are the Motion for Summary Judgment of Plaintiff Lynda Graves (Dkt. # 7) and the Cross-Motion for Summary Judgment of Defendant Michael Astrue, Commissioner of Social Security (Dkt. # 10). For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's cross-motion.

**BACKGROUND**

On September 18, 2003, Plaintiff filed an application for disability benefits. (R. at 132.) Plaintiff alleged a disability date of October 15, 1998. (R. at 136.) Plaintiff later amended her claim to be for a closed period of time, ending on January 1, 2004 (on which date, she agreed, she was able to work). (R. at 215.) Plaintiff's claim was denied both initially and upon reconsideration. (*See* R. at 49-50.)

Plaintiff requested review by an Administrative Law Judge ("ALJ"). (R. at 8.) The ALJ approved Plaintiff's claim for a closed period of benefits, but judged that period to be from October 15, 1998, to December 31, 2001 (not January 1, 2004, as Plaintiff had alleged). (R. at 59.) The ALJ based that decision on evidence that Plaintiff experienced sufficient medical improvement after December 31, 2001, to resume sedentary work. (R. at 57.)

Upon review, the Appeals Council vacated the ALJ's decision. (R. at 108.) The Appeals Council noted that the ALJ gave the most weight to assessments stating that Plaintiff could work during the period of alleged disability. (R. at 109.) The Appeals Council thereupon reasoned that "if *greater weight is given to these assessments* . . . then a finding of not disabled at any time was appropriate." (*Id.*) The Appeals Council further noted that, pursuant to 20 C.F.R. § 404.621(d) (2003), a claimant must file a disability claim no later than twelve months after the month in which the period of disability ended. (R. at 109.) The Appeals Council thus reasoned that if Plaintiff's disability ended on December 31, 2001, as the ALJ concluded, then Plaintiff would be required to apply for benefits no later than January of 2003. (*See id.*) The Appeals Council opined that, having failed to apply for benefits until September of 2003, Plaintiff would be precluded from receiving disability benefits under the ALJ's reasoning. (*See id.*) For these reasons, the Appeals Council vacated the ALJ's decision and remanded for reconsideration. (R. at 108.)

On remand, the ALJ denied Plaintiff's claim in full. (R. at 15-22.) In determining whether Plaintiff was disabled, the ALJ again undertook the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520 (2003).[1] At step one, the ALJ determined that Plaintiff had

---

[1]Under that test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at

not engaged in substantial gainful activity during the period of alleged disability. (R. at 16.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of chronic low back pain and lumbar degenerative disc disease. (*Id.*) At step three, the ALJ determined that neither of those impairments, individually or collectively, met or equaled the criteria for any of the Social Security Administration's listed impairments. (R. at 17.) At step four, the ALJ determined that Plaintiff retained the residual functional capacity[2] to perform a "reduced range of medium exertional work" during the period of alleged disability, and thus that she could have engaged in her past relevant work as a housekeeper. (R. at 18, 21.) The ALJ therefore entered a finding that Plaintiff was not disabled during the period that she claimed. (R. at 21-22.)

The Appeals Council declined to review the ALJ's decision. (R. at 5.) Plaintiff filed the instant complaint on June 27, 2007, seeking this Court's review of the ALJ's denial of benefits.[3] (Dkt. # 1.) Plaintiff filed her Motion for Summary Judgment on November 2, 2007. (Dkt. # 7.) Defendant filed his Cross-Motion for Summary Judgment on November

---

> step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2]"Residual functional capacity" is the most a claimant can do despite the limitations caused by his impairments. SSR 96-8p (July 2, 1996).

[3]Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

19, 2007 (also serving as his Response to Plaintiff's motion). (Dkt. # 10.) Plaintiff never filed a response or reply.

**DISCUSSION**

**I. Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

**II. Analysis**

Plaintiff argues that the ALJ erred by (A) rejecting the opinions of treating physicians without substantial evidence (Dkt. # 9 at 5), and (B) reaching a different conclusion on remand than he did in his first decision. (*Id.* at 6.) Each argument is discussed in turn.

**A. The Treating Physicians' Testimony**

Plaintiff asserts that an ALJ must "give great weight to the opinions of treating physicians unless he rejects them with specific, legitimate reasons based on substantial evidence." (Dkt. # 9 at 5.) That is an accurate statement of the law. *See Rodriguez v.*

*Bowen*, 876 F.2d 759, 762 (9th Cir. 1989). Plaintiff thereafter states that the ALJ in this case "[did] not give this level of reasoning in his rejection of these opinions." (Dkt. # 9 at 5.)

Defendant responds by noting that Plaintiff's argument section "does not articulate what specific errors the ALJ allegedly made," but instead "simply lists several doctors' names, without reference to any actual opinion, dates that an opinion might have issued, or administrative transcript citations." (Dkt. # 10 at 2.) Defendant thus asserts that by failing to articulate an actual argument or make references to the record, Plaintiff has waived any claim of error on this point. (*Id.* at 2-3.) Defendant is correct.

"Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant . . . . Rather, we review only issues which are argued *specifically and distinctly* . . . ." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (internal quotations omitted and emphasis added). "A bare assertion of an issue does not preserve a claim . . . ." *D.A.R.E. America v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001) (internal quotations omitted). Rather, to preserve a claim for review, "[w]e require contentions to be accompanied by reasons." *Indep. Towers*, 350 F.3d at 930. When a claim of error is not properly argued and explained, the argument is waived. *See, e.g., id.* at 929-30 (holding that a party's argument was waived because "[i]nstead of making legal arguments," the party simply made a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding that an assertion of error was "too undeveloped to be capable of assessment" and thus waived).

Here, Plaintiff's argument is essentially only one paragraph and contains no record citations, no description or discussion of the relevant medical opinions, and, most importantly, no argument as to why the court erred - beyond the conclusory assertion that "the ALJ [did] not give [the requisite] level of reasoning." (*See* Dkt. # 9 at 5.) Because

Plaintiff made no attempt to articulate an argument supported by proper citations, Plaintiff's argument is deemed waived.[4]

The only argument the Court can discern from Plaintiff's first section, itself supported by only a single record citation, is that "[a]nother treating physician, Dr. Singh, also suggested [Plaintiff] was unable to do any work requiring any lifting in early 2000." (*Id.*) The statement to which Plaintiff refers is from a follow-up progress note, which, including the context, states: "[Plaintiff] still has residual pain but no objective neurological abnormalities. Dr. Miller can see her as needed *but I do not think she will be able to go back to work lifting*. There will be some restrictions. She wants to talk to Dr. Miller about that." (R. at 334 (emphasis added).) Plaintiff argues that "[t]he ALJ does not even discuss Dr. Singh's opinion and has erred in law accordingly." (Dkt. # 9 at 5.)

It is true that ALJs cannot ignore medical evidence. *See* SSR 96-5p (June 2, 1996) ("[A]djudicators must always carefully consider medical source opinions about any issue . . . ."). It is likewise true that the ALJ did not specifically restate this piece of evidence in the decision order. (*See* R. at 15-22.) However, Plaintiff identifies no authority that provides

---

[4]Regardless, the Court is convinced by its review of the record that the ALJ did not err. *See Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) (striking a brief and dismissing an appeal because the party's brief contained no legal argument or authority, but also reviewing the record to ensure that there was no obvious merit to the appeal). Over the course of several pages, the ALJ set forth in detail its reasons for rejecting the testimony of the physicians to whom Plaintiff refers. (*See* R. at 18-21.) The ALJ noted that "essentially all [of Plaintiff's] examinations have been unremarkable," that "[t]here were no neurological deficits on any examination," and that Plaintiff's "straight leg raising tests were usually negative." (R. at 18.) The ALJ further noted that "multiple objective studies [were] completely normal," including an electrodiagnostic study, x-ray, lumbar myelogram, computed tomography scan, and four magnetic resonance imaging scans. (R. at 19.) The ALJ further detailed inconsistencies in Plaintiff's subjective complaint and treatment histories, including the fact that "more than one doctor noted that the claimant had exaggerated complaints on examination." (*Id.*) Moreover, the ALJ relied on the medical opinions of other doctors, specifically Dr. Gurvey and Dr. Gauntt, in rejecting the testimony of the physicians on whom Plaintiff relied. (*See id.*) The ALJ thus gave specific, legitimate reasons for rejecting the physicians' testimony, and those reasons were supported by substantial evidence. *See Rodriguez*, 876 F.2d at 762.

that ALJs, in writing their decision orders, must recapitulate in excruciating detail each and every individual piece of medical evidence that has been submitted. If that were the case, then decision orders would be as long as the record itself. Rather, ALJs are required to articulate "specific and legitimate *reasons*" for rejecting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (emphasis added). According to the Ninth Circuit, "[t]he ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). So long as the ALJ does so, he need not recite any "magic words" in rendering his disposition. *See Magallanes*, 881 F.2d at 755 (holding that an ALJ, in selecting a disability onset date different than that suggested by a treating physician, was not required to specifically recite that he had rejected the physician's opinions for the enumerated reasons, but had met the standard by "summariz[ing] the facts and conflicting clinical evidence").

Here, the ALJ set forth specific and legitimate reasons that were supported by substantial evidence. In the course of discussing the voluminous medical evidence affirming that Plaintiff could perform a range of medium work, the ALJ stated that he had "considered the medical opinion evidence" and "carefully consider[ed] the entire record in this matter" (R. at 18), and that the medical opinions supporting a residual functional capacity below medium were "not consistent with the objective evidence and the unremarkable abnormal clinical findings during the relevant time period" (R. at 20). The ALJ based that finding on numerous pieces of objective medical evidence, doctors' opinions, and inconsistencies in Plaintiff's subjective complaint and treatment histories. (*See* R. at 18-21.) The ALJ's rejection of Dr. Singh's short, ambiguous statement ("[Plaintiff has] no objective neurological abnormalities . . . but I do not think she will be able to go back to work lifting"), which was made in the course of referring the issue to another doctor, is supported by Circuit precedent. *See Batson*, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . ."). That the ALJ did not specifically recapitulate the facts of a single ambiguous clause in one stray

progress note, itself buried in a record well in excess of four hundred pages, does not constitute error.

**B. New Findings on Reconsideration**

Plaintiff argues that the ALJ erred because he "changed his findings from the first hearing to the second without any additional objective medical evidence." (Dkt. # 9 at 6.) Plaintiff is referring to the fact that the ALJ initially approved Plaintiff for a closed period of disability benefits (R. at 59), had his decision vacated by the Appeals Council (R. at 108), and on remand for reconsideration determined that Plaintiff was not entitled to benefits (R. at 21-22). Plaintiff identifies no authority holding that an ALJ (or any adjudicator) may not change his mind on remand for reconsideration, nor does Plaintiff even attempt to articulate *why* it would be error for the ALJ to do so. Thus, the argument is waived. *See Segal v. Mass. Mut. Life Ins. Co.*, 10 F. App'x 451, 452 (9th Cir. 2001) ("Segal has waived his argument . . . because Segal does not explain in his brief to this court how the district court erred or cite any authority to support his argument."). Regardless, the Court finds it tautological that an adjudicator may "reconsider" his decision on remand for "reconsideration." The Court finds no error.

**CONCLUSION**

The ALJ made no error of law that was not harmless and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS HEREBY ORDERED** denying Plaintiff's Motion for Summary Judgment.

**IT IS FURTHER ORDERED** granting Defendant's Cross-Motion for Summary Judgment.

DATED this 5th day of September, 2008.

G. Murray Snow
United States District Judge